UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

PETER E. VARGA,                    )           Case No. 5:08 CV 1481
                                   )
              Plaintiff,           )           Judge Peter C. Economus
                                   )
     vs.                           )           REPORT AND RECOMMENDATION
                                   )              OF MAGISTRATE JUDGE
COMMISSIONER OF                    )
SOCIAL SECURITY,                   )
                                   )
              Defendant.           )           Magistrate Judge James S. Gallas
                                   )

     Peter E. Varga seeks reversal of the Commissioner's decision denying his application for

disability insurance benefits.  Varga is an individual in his forties with past relevant work in

manufacturing production which required medium level exertion.  He suffered a work-related back

injury in 2001 and has had two spinal surgeries- September 2002 and April 2003. He subsequently

developed a bilateral hip impairment due to avascular necrosis, severe depression and severe social

anxiety.  His current application for benefits was filed in November 2004 and denied by an ALJ on

November 14, 2007, following an administrative hearing. The Appeals Council adopted this decision

on May 13, 2008, making it the final decision by the Commissioner. See 20 C.F.R. §404.981. At

issue then is the November 14, 2007 determination.


     The ALJ found Varga's insured status expired on March 31, 2007, but that prior to this date

Varga had severe impairments of degenerative disc disease of the lumbar spine with spondylolysis

at L5 treated by fusion procedure from L4-S1 in September 2002 and refusion from L4-S1 because

of pseudoarthrosis at L4-L5 in April 2003, bilateral avascular necrosis of the hips, major depressive

disorder, panic disorder with agoraphobia, and obsessive compulsive disorder. (Tr. 18). The ALJ

1:08 CV 1481                                                       2

found that Varga could not return to his past relevant work, but his impairments did not prevent him

from performing light work, reduced non-exertionally by a limitation to simple, routine work

without high production quotas or piece work and superficial interaction with coworkers and

occasional interaction with the public without negotiation or confrontation (Tr. 26).  A vocational

expert appearing at the administrative hearing testified that under the foregoing restrictions, Varga

would be able to perform jobs as cleaner, packer and dishwasher.  Varga raises the following issues:

>  I. WHETHER THE ALJ'S FINDING THAT THE PLAINTIFF RETAINS THE
>  RESIDUAL FUNCTIONAL CAPACITY FOR A RANGE OF LIGHT WORK IS
>  SUPPORTED BY SUBSTANTIAL EVIDENCE.
>
>  II. WHETHER THE ALJ ACCORDED APPROPRIATE WEIGHT TO THE
>  OPINIONS OF PLAINTIFF'S TREATING PHYSICIAN.
>
>  III. WHETHER THE ALJ ERRED IN FAILING TO CALL A MEDICAL EXPERT.

This dispute has  led to this appeal under 42 U.S.C. §405(g), which has been referred for report and

recommended disposition. For the reasons that follow, it is recommended that this matter be

remanded to the Commissioner under the Fourth Sentence of 42 U.S.C. §405(g).

*Standard of Review:*

          The issues before this court must be resolved under the standard whether there is substantial

evidence in the record to support the Commissioner's decision.  Substantial evidence is evidence that

a reasonable mind would accept as adequate to support the challenged conclusion.  *Casey v.

Secretary of Health & Human Services*,  987 F.2d 1230, 1233 (6th Cir. 1993);  *Wyatt v. Secretary*,

974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see

1:08 CV 1481                                                3

*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment.  See §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1.  See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d).  If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience.  See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work."  *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the

1:08 CV 1481                                         4

Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability.  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Ellis v. Schweiker*, 739 F.2d 245 (6th Cir. 1984); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).


*Varga's Residual Functional Capacity and Opinions from "Treating physicians":*

At the heart of the dispute over whether Varga can perform light exertion is the disparity between the Physical Residual Functional Capacity from non-examining state agency physicians following the February 21, 2005 consultative examination report from Dr. Saegh (Tr. 285-299), and the reports from alleged "treating physicians," Drs. Alam and Helmi (Tr. 451-52, 506-512).  The conclusions from the non-examining state agency physicians were that Varga could perform medium work with frequent lifting of 25 lbs., occasional lifting of 50 lbs., standing/walking for 6 hours, and frequent stooping and crouching, but without climbing of ladders, ropes or scaffolds. (Tr. 293-94). These conclusions were based largely on Dr Saegh's examination report of normal gait, normal heel/toe walk, no atrophy or spasm, and "no limitation of reasonable degree of physical activities" (Tr. 287). Varga further acknowledges that treating physician, Dr. Roberts, reported in March 2005, negative straight leg raising, intact motor strength, and "no leg pain, numbness or tingling" (Tr. 324).

Dr. Alam, completed a physical residual functional capacity assessment on September 13, 2006. (Tr. 451-452). Dr. Alam stated that, due to plaintiff's back pain, right lower extremity pain, and avascular necrosis of his hips, he could perform no lifting or carrying, stand for no more than a total of 1-2 hours in an eight hour day, sit for a total of no more than 4 hours in an eight hour day,

1:08 CV 1481                                     5

and rarely perform postural activities of climbing, balancing, stooping, crouching, kneeling or crawling, and pushing and pulling. (Tr. 451-452). Dr. Alam added that Mr. Varga "should use a cane for walking more than 5 minutes." (Tr. 452). The ALJ noted that there were no signs or findings from Dr. Alam in the record to support this opinion, and that it appeared to be merely a recitation of Varga's own symptoms and functional limitations (Tr. 30). The critical factor missing from Dr. Alam's opinion was supportability. "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion." See 20 C.F.R. §§404.1527(d)(3).

Dr. Helmi issued a physical residual functional capacity assessment nearly a year later on October 24, 2007. (Tr. 506-507). Consistent with the opinion of Dr. Alam's earlier opinion, Dr. Helmi opined that Mr. Varga could lift no more than 5 pounds, stand for a total of 30 minutes, sit for a total of two hours, that he requires additional breaks than those commonly afforded in a typical work day, that he requires a cane to ambulate, and that he suffers from moderate to severe pain. (Tr. 507). The ALJ did *not* acknowledge Dr. Helmi's opinion.

The Commissioner argues that Dr. Alam's opinion was contradicted by substantial evidence and that the flaws in Dr. Alam's opinion also plagued Dr. Helmi's opinion so that the ALJ would have treated it the same way. The Court, however, need not delve into the Commissioner's hypothetical premise. Dr. Helmi's opinion was not properly before the ALJ. Varga mailed a copy of this doctor's opinion and report on November 7, 2007 (Tr. 505). However, the hearing had been held on October 9, 2007 (Tr. 517), and Varga did not request that the record be held open to receive

1:08 CV 1481                                    6

new evidence (Tr. 553).  Post-hearing evidence submitted by a claimant constitutes "new" evidence

and is subject to the constraints of a sixth sentence remand under 42 U.S.C. §405(g). [1] This court

cannot circumvent the sixth sentence's prohibition against the inclusion of new evidence into

judicial review.  See  *Cotton v. Secretary*, 2 F.3d 692, 695-96 (6th Cir. 1993); *Barker v. Shalala*, 40

F.3d 789, 794 (6th Cir. 1994); *Cline v. Commissioner*, 96 F.3d 146, 148-49 (6th Cir. 1996).  The court

reviews post-hearing evidence "solely to determine whether a remand is warranted under sentence

six of 42 U.S.C. § 405(g)." *Hensley v. Commissioner of Social Sec.,* 214 Fed.Appx. 547, 550, 2007

WL 162997 (6th Cir. 2007). Varga has the burden of demonstrating that the evidence was new and

material and that there was "good cause" for failing to incorporate this evidence into the record at

the hearing. See *Hollon ex rel. Hollon v. Commissioner of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir.

2006); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Varga does not meet this burden.


        Ultimately "the court remands because new evidence has come to light that was not available

to the claimant at the time of the administrative proceeding and that evidence might have changed

the outcome of the prior proceeding." *Melkonyan v. Sullivan,* 501 U.S. 89, 98, 111 S.Ct. 2157, 2163,

115 L.Ed.2d 78 (1991). Dr. Helmi's report would not have changed the outcome. Varga argues that

---

        [1] The sixth sentence of 42 U.S.C. § 405(g) reads, "The court may ... at any time order additional evidence to
be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is
material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding
...."

1:08 CV 1481                                              7

Drs. Helmi and Alam were treating physicians. In determining the question of substantiality of the evidence, reports of physicians who have provided treatment over a long period of time are entitled to greater weight than the reports of physicians employed by the government for the purpose of defending against a claim for disability. See 20 C.F.R. §404.1527(d)(2); §416.927(d)(2).; 20 C.F.R. §404.1527(d)(3); §416.927(d)(3). This is commonly known as the "treating physician rule." See *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *Wilson* v. *Commissioner of Soc. Sec.*, 378 F.3d 541, 544(6th Cir. 2004). The ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2). The Commissioner argues that Drs. Alam and Helmi were not treating physicians and and adds that the ALJ reasonably deduced that Dr. Alam was not a true treating physician from the lack of evidence of any treatment. The Commissioner is correct.

No opinion on Varga's physical limitations from a treating physician is at issue. For a physician to be a "treating physician" there must be a "treating relationship" (20 C.F.R. §404.1527(d)(2); §416.927(d)(2)). The length of the treatment relationship and frequency of examination **must be evidenced in the record**. (§404.1527(d)(2)(j);§416.927(d)(2)(j)). An ongoing treating relationship must be established at the time of the report is rendered to qualify this doctor as a treating physician. See *Kornecky v. Commissioner of Soc. Sec.*, 167 Fed. Appx. 496, 506, 2006 WL 305648 (6th Cir. Feb. 9, 2006) (unreported). One visit does not establish a treating relationship. See *Barker, v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Varga cannot indicate in the record where

he was examined by Dr. Alam, and Dr. Helmi's residual functional capacity assessment was rendered on the first day that Varga visited that doctor, October 27, 2007. (Tr. 506-08). These physicians were not treating physicians, so the "treating physician rule" has no application to the ALJ's assessment of physical limitation.

However, this leads to Varga's avascular necrosed hip joints, which was diagnosed in 2006. Dr. Brady, who was treating Varga, found Varga was too young for hip replacement surgery and his plan was to order crutches and wean Varga to a cane (Tr. 428). The ALJ noted that Dr. Saegh's consultative report had been made prior to the onset of pelvic avascular necrosis (Tr. 29). The ALJ did not engage another physician to consider this more recent impairment, but instead concluded that based on "the objective evidence" that Varga could perform light work (Tr. 31).

The ALJ succumbed to the temptation to not only decide the case, but to produce his own evidence to decide the case. The ALJ never explained what "evidence" established light work capability given that Varga was using crutches and cane. What the ALJ did was to take the medium work conclusion from the non-examining state agency physicians, down a notch to light work. It is difficult to fathom how a hip impairment reduced lifting and carrying ability from 50/25 lbs. to the light work limits of 20/10 lbs.[2]  Light work entails being on one's feet six hours of an eight hour

---

[2]  The regulations define light work as:

. . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide

1:08 CV 1481                                             9

work day. See SSR 83-10, 1983 WL 31251, at *6 . Likewise, "[a] full range of medium work requires standing or walking, off and on,  for a total of approximately six hours in an eight-hour workday[.]" *Id.*  Obviously, Varga's most recent impairment affected his lower extremities, so reducing lifting requirements from medium exertion to light exertion did not reduce the amount of time required for him to remain on his feet while supported by crutches or cane.[3]

The Sixth Circuit has stated that use of a cane is a non-exertional limitation, and this additional non-exertional limitation should have been included in the assessment of Varga's residual functional capacity irregardless of the disposition of Dr. Helmi's opinion.  Accordingly, while Varga is incorrectly argued that Drs. Alam and Helmi were treating physicians, and he failed to demonstrate "good cause" for remand to the Commissioner to reevaluate the determination in light of Dr. Helmi's post-hearing report, Varga is correct that the ALJ's physical assessment is incomplete.

*Lack of Medical Expert:*

---

range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

 A prohibition against work involving ladders, ropes and scaffolds has very little or no effect on the light work occupational base. See SSR 83-14.

[3] In contrast to the situation in *Carreon v. Masanari*, 51 Fed. Appx. 571 (6th Cir. Nov. 21, 2002), there is no evidence that the cane was not obligatory for Varga, but served only for "insurance." The ALJ in Varga's case had noted that Varga had developed an antalgic gait secondary to the hip impairment, which had improved with the use of a cane. (Tr. 29).

1:08 CV 1481                                                    10

Varga contends that medical expert testimony was necessary and refers the court to HALLEX provisions on situations warranting the appearance of a medical expert. Varga argues the medical testimony was necessary given the complicated nature of his severe bilateral hip impairments, lumbar spondylolysis and status post lumber fusions.

Courts have given substantial deference to the Social Security Administration's Hearings, Appeal and Litigation Law Manual (HALLEX).[4]  This deference extends to the permissive language used in HALLEX. "The language of the regulations applicable to an ALJ's use of medical advisors is permissive, not mandatory: '[ALJ]s *may ask for and consider* the opinions of medical advisors on the nature and severity of your impairment(s) and whether your impairment(s) equals the requirements of any listed impairment...." 20 C.F.R. §§ 404.1527(f)(2) (emphasis added).'" *Coleman v. Chater* 1996 WL 279868, at * 4 (6th Cir.1996)(unreported); and see *Holmes v. Commissioner of Soc. Sec.*, 2009 WL 762230 at *14 (S.D. Ohio); *Griffin v. Astrue*, 2009 WL 633043, at *10 (S.D. Ohio).[5] However, this deference does not absolve the ALJ from failure of his duty of "full inquiry"

_____

[4] *See Bowie v. Commissioner of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008)*;Russell v. Commissioner of SS*, 20 F.Supp.2d 1133, 1134 (W.D. Mich. 1998); *DeChirico v. Callahan*, 134 F.3d 1177 (2nd Cir. 1998); *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997).

[5]  "An ALJ's decision whether a medical expert is necessary, however, is inherently discretionary. See HALLEX I-2-5-32, -34 (September 28, 2005). An ALJ thus abuses his discretion by failing to consult a medical expert only when the testimony of such an expert is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations." *Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir.1989) (citing 20 C.F.R. § 416.1444). Accordingly, " 'full inquiry' does not require a consultative examination ... unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." *Landsaw*,[*v.Secretary of Health and Human Servs.*,] 803 F.2d [211] at 214[(6th Cir. 1986)] (citation omitted) (emphasis in original)."

*Griffin v. Astrue*,  2009 WL 633043, at *10 (S.D. Ohio).

1:08 CV 1481                                    11

where such testimony is necessary for the determination. See *Griffin v. Astrue,* 2009 WL 633043 at *10.

 

In this matter a "full inquiry" would have led to the ALJ obtaining either another residual functional capacity assessment which included consideration of pelvic avascular necrosis or alternatively the testimony from a physician with orthopaedic medical expertise. The ALJ's unexplained reduction from the medium exertion opinion of non-examining state agency physicians to light exertion did not constitute "full inquiry."

*Fourth Sentence Remand:*

Congress has authorized remand to the Commissioner under the fourth sentence where the district court does not retain jurisdiction even though new evidence may be considered. See *Faucher v. Secretary of HHS*, 17 F.3d 171, 174-75 (6th Cir. 1994), citing *Sullivan v. Hudson*, 490 U.S. 877, 880, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Generally, when one of the ALJ's factual findings is not supported by substantial evidence, recourse is through a remand under the fourth sentence. *Faucher*, 17 F.3d at 175-76. The Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d at 176; *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983).

1:08 CV 1481                                            12

The only issue on which Varga prevails is the lack of a residual functional capacity finding from the ALJ, supported by substantial evidence, for use in vocational consideration. Additional findings were necessary regarding Varga's need to use cane or crutches and the impact of this limitation on his residual functional capacity, and whether pelvic avascular necrosis to the degree demonstrated by the objective evidence would restrict "basic work activities" as defined under 20 C.F.R. §404.1521(b). Accordingly remand under the fourth sentence of 42 U.S. C. §405(g) is necessary.

## CONCLUSION

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned finds that the Commissioner's decision denying disability insurance benefits is not supported by substantial evidence due to the unresolved questions surrounding the effect of pelvic avascular necrosis as noted by Dr. Brandy on Varga's ability to ambulate and or stand. Accordingly, the denial of disability insurance benefits should be remanded under the fourth sentence of 42 U.S.C. §405(g) for reassessment of Varga' residual functional capacity to include consideration of the non-exertional restriction due to use of crutches or cane and whether this degenerative condition would restrict Varga's ability to perform light or sedentary work.



                             s/James S. Gallas
                        United States Magistrate Judge

Dated: July 9, 2009

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).